Justice Scalia,
dissenting.
The obvious, undeniable, purpose of 28 U. S. C. § 2253(c) is to spare three-judge courts of appeals the trouble of enter­ *155 taining (and the prosecution the trouble of defending against) appeals from the denials of relief in habeas and §2255 pro­ceedings, unless a district or circuit judge has identified an issue on which the applicant has made a substantial showing of a constitutional violation. Where no such constitutional issue has been identified, an appeal on other, nonconstitu-­tional, issues (such as the statute-of-limitations issue that the Court decides today) will not lie.
Today’s opinion transforms this into a provision that allows appeal so long as a district or circuit judge, for what­ever reason or for no reason at all, approves it. This makes a hash of the statute. The opinion thinks this alchemy re­quired by the Court’s previously expressed desire to “ ‘bring some discipline’ to the use of the term ‘jurisdictional,’ ” ante, at 141 (quoting Henderson v. Shinseki, 562 U. S. 428, 435 (2011)). If that is true, discipline has become a code word for eliminating inconvenient statutory limits on our juris­diction. I would reverse the judgment below for want of jurisdiction.
I
Fair Meaning of the Text
Congress amended § 2253 to its current form in the Anti-­terrorism and Effective Death Penalty Act of 1996 (AEDPA). In its entirety, the section reads as follows:
“(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
“(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person’s detention pending removal proceedings.
*156 “(c)(1) Unless a circuit justice or judge issues a cer­tificate of appealability, an appeal may not be taken to the court of appeals from—
“(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
“(B) the final order in a proceeding under section 2255.
“(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substan­tial showing of the denial of a constitutional right.
“(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).”
As the Court acknowledges, ante, at 142, all three subsec­tions — (a), (b), and (c) — clearly speak to the jurisdiction of the courts of appeals. Subsection (a) gives appellate juris­diction to “the court of appeals for the circuit in which the proceeding is held”; subsection (b) carves out certain classes of cases from that appellate jurisdiction; and subsection (c) imposes a procedural hurdle to the exercise of that appellate jurisdiction — a judge’s issuance of a certificate of appealabil­ity, see Miller-El v. Cockrell, 537 U. S. 322, 336 (2003).
Paragraph 2253(c)(3) says that a certificate of appealability (or COA) must “indicate” which issue or issues in the case involve a substantial showing of a constitutional violation. Everyone agrees that the certificate issued below contains no such indication. See ante, at 141. It appears, in fact, that the issuing judge never considered whether any of Gonzalez’s constitutional claims satisfied paragraph (2). As far as we know, no federal judge has ever determined that Gonzalez “has made a substantial showing of the denial of a constitu­tional right.” § 2253(c)(2). The Court does not even suggest that he has — but it goes on to decide the statute-of-limitations issue in the case.
Its basis for proceeding in this fashion is the remarkable statement that “[a] defective COA is not equivalent to the *157 lack of any COA.” Ante, at 143. That is simply not true with respect to a significant defect in a legal document. Would one say that a deed which lacks the words of convey­ance is not equivalent to the lack of a deed? Or that a pass­port which lacks the Secretary of State’s affirmance of the bearer’s citizenship is not equivalent to the lack of a passport? Minor technical defects are one thing, but a defect that goes to the whole purpose of the instrument is something else. And the whole purpose of the certificate-of-appealability pro­cedure is to make sure that, before a case can proceed to the court of appeals, a judge has made the determination that it presents a substantial showing of the denial of a constitu­tional right. To call something a valid certificate of appeal-­ability which does not contain the central finding that is the whole purpose of a certificate of appealability is quite absurd.
The Court says that “[o]nce a judge has made the determi­nation that a COA is warranted and resources are deployed in briefing and argument,... the COA has fulfilled [its] gate-­keeping function.” Ante, at 145. But of course it has not done so — it has performed no gatekeeping function what­ever — if “the determination that a COA is warranted” has not been accompanied by the issuing judge’s opinion required to support the determination: that there is an issue as to which the applicant has made a “substantial showing of the denial of a constitutional right,” § 2253(c)(2). As the very next sentence of today’s opinion discloses, what the Court means by “has fulfilled [its] gatekeeping function” is simply that it will not be worth the trouble of going back, since that would “not outweigh the costs of further delay,” ibid.
That is doubtless true, and it demonstrates the hollowness of the Court’s assurance that “calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objec­tion can be ignored,” ante, at 146. That statement is true enough as a general proposition: Calling the numerosity re­quirement in Arbaugh v. Y & H Corp., 546 U. S. 500 (2006), nonjurisdictional, for example, did not eliminate it, where *158 protest was made, as a continuing mandatory requirement for relief on the merits, id., at 516. Even the time-of-filing requirement in Eberhart v. United States, 546 U. S. 12 (2005) (per curiam), continued to have “bite” even though it was held nonjurisdictional: It prevented relief when the failure to observe it was properly challenged, id., at 19. But the Court has managed to create today a “mandatory” require­ment which — precisely because it will not be worth the trouble of going back — has no practical, real-world effect.[1] What is the consequence when the issuing judge, over prop­erly preserved objection, produces a COA like the one here, which does not contain the required opinion? None what­ever. The habeas petitioner already has what he wants, ar­gument before the court of appeals. The government, for its part, is either confident in its view that there has been no substantial showing of denial of a constitutional right — in which case it is just as easy (if not easier) to win before three judges as it is before one; or else it is not — in which case a crusade to enforce § 2253(c) is likely to yield nothing but additional litigation expenses. As for the three-judge panel of the court of appeals, it remains free, as always, to choose whichever mandatory-but-not-jurisdictional basis it wishes for resolving the case. Cf. Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 93-94 (1998). Why not choose the one that is sure to be final and that might avoid embar­rassing a colleague? No one has any interest in enforcing the “mandatory” requirement. Which is perhaps why, as I proceed to discuss, mandatory requirements for court-to-­court appeal are always made jurisdictional.
*159 Past Treatment of Similar Provisions
As the Court acknowledges, “‘context, including this Court’s interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional.’ ” Ante, at 142, n. 3 (quoting Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 168 (2010)). Thus, we have said that a requirement prescribed as a condition to obtain­ing judicial review of agency action is quite different (nonju-­risdictional) from a requirement prescribed as a condition to appeal from one court to another (jurisdictional). See Hen­derson, 562 U. S., at 434. We have always — always, without exception — held that procedural conditions for appealing a case from one Article III court to another are jurisdictional. When an appeal is “not taken within the time prescribed by law,” the “Court of Appeals [is] without jurisdiction.” George v. Victor Talking Machine Co., 293 U. S. 377, 379 (1934) (per curiam); see also United States v. Robinson, 361 U. S. 220, 229-230 (1960). When a party’s name is not listed in the notice of appeal, as the Federal Rules of Appellate Procedure require, the court has no jurisdiction over that party’s appeal. Torres v. Oakland Scavenger Co., 487 U. S. 312, 314-315 (1988).
When this Court reviewed cases by writ of error, the law required that the lower-court record be filed with the Court “before the end of the term next succeeding the issue of the writ.” Edmonson v. Bloomshire, 7 Wall. 306, 309 (1869). The Court routinely dismissed cases that did not comply with that requirement. See, e. g., Mesa v. United States, 2 Black 721, 722 (1863) (per curiam); Edmonson, supra, at 309-310; Steamer Virginia v. West, 19 How. 182, 183 (1857). The same jurisdictional treatment was accorded to failure to serve notice on the defendant in error within the succeeding Term, see, e. g., United States v. Curry, 6 How. 106, 112-113 (1848); Villabolos v. United States, 6 How. 81, 88, 91 (1848), and to failure to file the writ of.error with the clerk of the lower court, see, e. g., Credit Co. v. Arkansas Central R. Co., 128 U. S. 258, 261 (1888); Scarborough v. Pargoud, 108 U. S. *160 567 (1883). Today, when a petition for certiorari in a civil case is not filed within the time prescribed by 28 U. S. C. § 2101(c), this Court lacks jurisdiction. Federal Election Comm’n v. NRA Political Victory Fund, 513 U. S. 88, 90 (1994) (citing Missouri v. Jenkins, 495 U. S. 33, 45 (1990)); see also Matton S. S. Co. v. Murphy, 319 U. S. 412, 415 (1943) (per curiam).[2]
So strict has been the rule enforcing as jurisdictional those requirements attached to court-from-court appeals, that we have applied it to a requirement contained in a statute not even addressed to the courts. Section 518(a) of Title 28 charges the Solicitor General with “conducting] and ar­guing] suits and appeals in the Supreme Court... in which the United States is interested.” We held that, absent inde­pendent statutory authority, an agency’s petition for certio-­rari filed without authorization from the Solicitor General does not suffice to invoke our jurisdiction. NRA Political Victory Fund, supra, at 98-99.[3]
Jurisdictional enforcement of procedural requirements for appeal has deep roots in our jurisprudence. Chief Justice *161 Taney dismissed an appeal in which the citation was not is­sued and served in time, because “we have no power to re­ceive an appeal in any other mode than that provided by law.” Villabolos, swpra, at 90. And Chief Justice Chase wrote, in a case dismissing an appeal for failure to file in time:
“In the Judiciary Act of 1789, and in many acts since, Congress has provided for [appellate courts’] exercise [of jurisdiction] in such cases and classes of cases, and under such regulations as seemed to the legislative wisdom convenient and appropriate. The court has always re­garded appeals in other cases as excepted from the grant of appellate power, and has always felt itself bound to give effect to the regulations by which Con­gress has prescribed the manner of its exercise.” Cas­tro v. United States, 3 Wall. 46, 49 (1866).
Jurisdictional Nature of Predecessor Provision
But similarity to a general type of provision that has al­ways been held jurisdictional is not all that supports the jurisdictional character of § 2253(c)(3). Its very predecessor statute made a judge’s expression of opinion a condition of appellate jurisdiction. The certificate of probable cause, of which the COA was born, arrived on the scene over 100 years ago in “An Act Restricting in certain cases the right of appeal to the Supreme Court in habeas corpus proceed­ings,” Act of Mar. 10, 1908, ch. 76, 35 Stat. 40:
“[F]rom a final decision by a court of the United States in a proceeding in habeas corpus where the detention complained of is by virtue of process issued out of a State court no appeal to the Supreme Court shall be allowed unless the United States court by which the final decision was rendered or a justice of the Supreme Court shall be of opinion that there exists probable cause for an appeal, in which event, on allowing the *162 same, the said court or justice shall certify that there is probable cause for such allowance.”
The last version of this statute, before it was amended to its current form in AEDPA, provided for issuance of the certifi-' cate of probable cause by a circuit judge instead of a justice. See §2253, 62 Stat. 967 (codified at 28 U. S. C. §2253 (1946 ed., Supp. II)). Even applying the Court’s simplistic rule that the jurisdictional restriction must be contained in the very same paragraph as the procedural requirement, there is no doubt that under this statute a judge’s certification that there was probable cause for an appeal was jurisdictional. See, e. g., Ex parte Patrick, 212 U. S. 555 (1908) (per cu-­riam); Bilik v. Strassheim, 212 U. S. 551 (1908) (per cu-­riam). There is no reason whatever to think that Congress rendered the statement of opinion unnecessary for jurisdic­tion by (1) extending the requirement for it to §2255 pro­ceedings; (2) requiring the opinion to address a more specific point (not just probable cause for an appeal but presence of an issue presenting a “substantial showing of the denial of a constitutional right”);[4] and (3) giving the document in which the judge is required to express the opinion a name (“cer­tificate of appealability”) — so that now a “certificate of ap-­pealability” without opinion will suffice. Neither any one of these steps, nor all of them combined, suggest elimination of jurisdictional status for the required expression of opinion.[5] *163 It would be an entirely strange way of achieving that result. It was not a strange way, however, of dividing the now more complex and lengthy provision into manageable subsections.
Stare Decisis Effect of Torres
In addition to the fact that conditions attached to court-­to-court appeal have always been held jurisdictional, and the fact that this statute’s predecessor was held to be so, we have considered, and found to be jurisdictional, a statute pre­senting precisely what is at issue here: a provision governing court-to-court appeals which made particular content a re­quired element of a document that the statute said was nec­essary for jurisdiction; and which did that in a separate sec­tion that “excluded the jurisdictional terms,” ante, at 145. That case flatly contradicts today’s holding. In Torres v. Oakland Scavenger Co., 487 U. S. 312, we dealt with Rule 3(c)(1) of the Federal Rules of Appellate Procedure. Rule 3(a) of those Rules makes a notice of appeal necessary to appellate jurisdiction — just as § 2253(c)(1) makes a certificate of appealability necessary. And Rule 3(c)(1), which, like § 2253(c)(3), does not contain jurisdictional language, says what the requisite notice of appeal must contain — just as § 2253(c)(3) says what the requisite certificate of appealabil­ity must contain:
“The notice of appeal must:
“(A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice ...;
“(B) designate the judgment, order, or part thereof being appealed; and
“(C) name the court to which the appeal is taken.”
*164 In Torres we held that the Court of Appeals lacked jurisdic­tion over the appeal of a party not properly named in the notice of appeal. 487 U. S., at 314-315. The parallel is perfect.
The Court claims that the jurisdictional consequences of Rule 3(c) were “‘“imposed by the legislature,” ’ ” ante, at 147 (quoting Torres, supra, at 318), which according to the Court’s analysis “ ‘clearly state[d],’ ” ante, at 141 (quoting Ar-­baugh, 546 U. S., at 515), that Rule 3(c) is jurisdictional. But the Legislature there did precisely what it did here: made a particular document necessary to jurisdiction and then speci­fied what that document must contain.[6] I certainly agree that that is a clear statement that a document with the requi­site content is necessary to jurisdiction. But the Court does not. So to distinguish Torres it has to find something else in Rule 3(c) that provided a “clear statement” of what “Con­gress intended,” ante, at 142. The best it can come up with, ante, at 147, is an '¿mclear statement, and that not from Con­gress but from Advisory Committee Notes referred to in the Torres opinion. Such Notes are (of course) “the product of the Advisory Committee, and not Congress,” and “they are transmitted to Congress before the rule is enacted into law.” United States v. Vonn, 535 U. S. 55, 64, n. 6 (2002). They are, in other words, a species of legislative history. I know *165 of no precedent for the proposition that legislative history can satisfy a clear-statement requirement imposed by this Court’s opinions. Does today’s distinguishing of Torres mean that legislative history can waive the sovereign immu­nity of the United States?.- See United States v. Nordic Village, Inc., 503 U. S. 30, 33-34 (1992). Or abrogate the sovereign immunity of the States? See Atascadero State Hospital v. Scanlon, 473 U. S. 234, 242 (1985). Or give ret­roactive effect to new legislation? See Greene v. United States, 376 U. S. 149, 160 (1964). Or foreclose review of agency actions? See Abbott Laboratories v. Gardner, 387 U. S. 136, 141 (1967). Today’s opinion is in this respect a timebomb.
To make matters worse, the Advisory Committee Note considered by the Torres Court — as “support for [its] view,” 487 U. S., at 315 — did not clearly say that Rule 3(e)’s require­ments were jurisdictional. It said this:
“ ‘Rule 3 and Rule 4 combine to require that a notice of appeal be filed with the clerk of the district court within the time prescribed for taking an appeal. Be­cause the timely filing of a notice of appeal is “manda­tory and jurisdictional,” United States v. Robinson, 361 U. S. 220, 224 (1960), compliance with the provisions of those rules is of the utmost importance.”’ Id., at 315 (quoting 28 U. S. C. App., p. 467 (1982 ed.); brackets omitted; emphasis added).
To say that timely filing of a notice of appeal is jurisdictional, and that placing within the notice of appeal what Rule 3 says it must contain is “of the utmost importance,” does not re­motely add up to a clear statement that placing within the notice of appeal what Rule 3 says it must contain is jurisdic­tional. There is simply no principled basis for saying that Torres satisfies the “clear-statement principle,” ante, at 142, except the commonsense notion that when a document is *166 made jurisdictional, and the required contents of that docu­ment specified, a document that does not contain those con­tents cannot confer jurisdiction.[7]
The Court is not willing to say that Torres is no longer good law, but I doubt whether future litigants will be so coy. They know that in the past, to avoid the uncongenial rigidity of the rule that procedures attending court-to-court appeals are jurisdictional, we have performed wondrous contortions to find compliance with those rules. For example, in Smith v. Barry, 502 U. S. 244, 248 (1992), we held that an “informal brief” filed after a defective notice of appeal counted as a valid notice of appeal. In Foman v. Davis, 371 U. S. 178, 181 (1962), we held that a notice of appeal from the denial of a motion to vacate the judgment was also a notice of appeal from the underlying judgment. And in Houston v. Lack, 487 U. S. 266, 270 (1988), we held that a prisoner’s notice of appeal was “filed” when it was delivered to prison authorities for forwarding to the District Court. These (shall we say) creative interpretations of the procedural requirements were made necessary by the background principle that is centuries old: “[I]f the mode prescribed for removing cases by writ of error or appeal be too strict and technical, and likely to produce inconvenience or injustice, it is for Congress to pro­vide a remedy by altering the existing laws; not for the court.” Curry, 6 How., at 113. But if we have been willing to expose ourselves to ridicule in order to approve implausi­ble compliance with procedural prerequisites to appeal, surely we may be willing to continue and expand the process *167 of simply converting those obnoxious prerequisites into the now favored “claims processing rules,” enabling us to avoid unseemly contortions by simply invoking the ever-judge-­friendly principles of equity.
What began as an effort to “ ‘bring some discipline’ to the use of the term ‘jurisdictional,’ ” ante, at 141 (quoting Hen­derson, 562 U. S., at 435), shows signs of becoming a liber­tine, liberating romp through our established jurisprudence.
J — ( 1 — 1
A few remaining points raised by the Court s opinion war­rant response.
The Court holds that the requirement imposed by para­graph (e)(2) (that a COA may issue “only if the applicant has made a substantial showing of the denial of a constitutional right”) is not jurisdictional, and says that “[i]t follows that § 2253(c)(3) is nonjurisdictional as well.” Ante, at 143. I need not reach the issue whether (c)(2) is jurisdictional— though it seems to me that the Court disposes rather sum­marily of the Solicitor General’s view that it is. And I need not confront the Court with the back-at-you argument that if (c)(3) is jurisdictional (as I think) then (c)(2) is as well. For whether one runs it backwards or forwards, the argu­ment is a bad one. Assuming that (c)(2) is nonjurisdictional, it does not at all “follow” that (c)(3) is nonjurisdictional as well. Paragraph (c)(3) is jurisdictional not because it is lo­cated in subsection (c), but because it describes the required content of a COA. Paragraph (c)(2) does not; it sets forth the criterion for a COA’s issuance. A judge may apply that criterion erroneously but still produce a COA that (as para­graph (c)(3) requires) “indicated] which specific issue or is­sues satisfy the showing required by paragraph (2).” It no more follows that the erroneousness of the judge’s indication must destroy the jurisdiction that the COA creates, than it followed under the predecessor statute that the erroneous­ness of the certification of probable cause for an appeal de­ *168 stroyed the jurisdiction that the certification created.[8] The two issues are quite separate: what the judge must find, and what the COA (or certification) must contain.
The Court points out that Gonzalez raised the Sixth Amendment issue in his application for a COA, that “[a] peti­tioner, having successfully obtained a COA, has no control over how the judge drafts the COA,” and that the petitioner, “as in Gonzalez's case, may have done everything required of him by law.” Ante, at 144. Perhaps it is true that the de­fective COA was not at all Gonzalez’s fault — though he could have promptly moved to amend it. But no-fault elimination of jurisdiction is not forbidden. In Bowles v. Russell, 551 U. S. 205 (2007), we enforced a time limit on notice of appeal where the District Court had purported to extend the time to file and the appellant had complied with the court’s order. Id., at 207,213-214. It did not matter that the fault lay with the court.
Finally, the Court points out that treating § 2253(c)(3) as jurisdictional would waste a lot of time. “Even if additional screening of already-issued COAs for § 2253(c)(3) defects could further winnow the cases before the courts of appeals, that would not outweigh the costs of further delay from the extra layer of review.” Ante, at 145. But that is not an argument directed to the statute before us; it is an argument directed against enforcement of all jurisdictional require­ments (all of which, I suspect, are the object of the Court’s mounting disfavor). And the argument may not even be true, except in the (presumably rare) case where the juris­dictional prescription is disregarded. Over the long term, *169 the time saved to judges and lawyers by an enforceable re­quirement that appeals be screened by a single judge may vastly outweigh the time wasted by the occasional need for enforcement. That, it seems to me, is what Congress believed.
* * *
Terminology is destiny. Today’s holding, and the erosion of our prior jurisprudence that will perhaps follow upon it, is foreshadowed and facilitated by the unfortunate terminology with which we have chosen to accompany our campaign to “bring some discipline” to determinations of jurisdiction. We have said that the universe of rules placing limitations upon the courts is divided into (1) “claims processing rules,” and (2) jurisdiction-removing rules. Unless our prior, juris­prudence is to be repudiated, that is a false dichotomy. The requirement that the unsuccessful litigant file a timely notice of appeal, for example, is (if the term is to have any meaning) a claims-processing rule, ordering the process by which claims are adjudicated. Yet as discussed above, that, and all procedures that must be followed to proceed from one court to another, have always been deemed jurisdictional. The proper dichotomy is between claims-processing rules that are jurisdictional, and those that are not. To put it other­wise suggests a test for jurisdiction that is not to be found in our cases.[9]
*170 At the end of the day, the indication requirement in §2253(c)(3) is “‘imposed by the legislature and not by the judicial process.’” Torres, 487 U. S., at 318 (quoting Schia-­vone v. Fortune, 477 U. S. 21, 31 (1986)). Whether or not its enforcement leads to a harsh result, wastes time in this particular case, or (though the Court does not give this as a reason) prevents us from reaching a Circuit conflict we are dying to resolve, we are obliged to enforce it. I respect­fully dissent.

 The Court suggests that I “ignorfe] the real world,” ante, at 146, n. 7, in which litigants and courts have taken steps to correct a defective COA. But these actions are unsurprising in a world in which there was the possibility that this Court would treat § 2253(c)(3) as a jurisdictional re­quirement and a Court of Appeals had already done so. The New World of the Court’s making, in which it is certain that an issuing judge’s failure to identify any issue justifying a COA will not have jurisdictional conse­quences, is yet unexplored.

 Since the time limits for filing petitions for certiorari in criminal cases are “not enacted by Congress but [are] promulgated by this Court under authority of Congress to prescribe rules,” we have held that they may “be relaxed by the Court in the exercise of its discretion when the ends of justice so require.” Schacht v. United States, 398 U. S. 58,64 (1970). The indication requirement of § 2253(c)(3), of course, has been “imposed by the' legislature and not by the judicial process.” Schiavone v. Fortune, All U. S. 21, 31 (1986).

 The Court cites Becker v. Montgomery, 532 U. S. 757 (2001), as a counterexample. Ante, at 144, n. 6. We held there that an appellant’s failure to sign his notice of appeal, see Fed. Rule Civ. Proc. 11(a), within the time prescribed for filing a notice of appeal, see Fed. Rule App. Proc. 4(a)(1), did not require dismissal where the notice-itself was timely filed. 532 U. S., at 762-763. We did not hold, however, that the signing require­ment was nonjurisdietional; we had no occasion to do so. We held that Becker had complied with Civil Rule 11(a) because the error was “‘cor­rected promptly after being called to [his] attention,”’ id., at 764 (quoting Fed. Rule Civ. Proc. 11(a)).

 The Court believes that the fact that this “new requirement... has no predecessor provision” suggests that it is nonjurisdictional. Ante, at 142, n. 3. To begin with, it is not that new, and it has a predecessor provision; it merely adds detail to the jurisdictional opinion that was previously re­quired. But even if the requirement were entirely unprecedented, when it appears within a textual structure that makes it jurisdictional (as our opinion in Torres v. Oakland Scavenger Co., 487 U. S. 312 (1988), held, see infra, at 163-166), it would be an entirely unprecedented jurisdictional provision.

 The Court’s opinion suggests that “[i]t would seem somewhat counter-­intuitive to render a panel of court of appeals judges powerless to act on appeals based on COAs that Congress specifically empowered one court *163 of appeals judge to grant.” Ante, at 143-144. To begin with, I do not think that an anomaly. It makes entire sense to enable a single circuit judge to nip improper appeals in the bud, sparing parties the trouble of an appeal, and courts the expenditure of three times as much judicial en­ergy. But if it were an anomaly, it would be one that existed as well under the prior statute, which was held to be jurisdictional.

 The Court’s claim that “Torres involved ... a different textual, contex­tual, and historical backdrop,” ante, at 148, n. 8, does not withstand scru­tiny. First, consider the “textual backdrop.” The Court cannot really believe that Rule 3(c)(l)’s statement that a notice of appeal “must . . . specify” the appealing party is “ ‘clear’ jurisdictional language,” ante, at 142, while § 2253(e)(3)’s “shall indicate” the issue or issues is not. If it did, it would say as much, since that would readily distinguish Torres. And then consider the “contextual” (whatever that means) and “historical back­drop.” Each provision, in mandatory-but-not-jurisdictional language, specifies what another document, itself jurisdictional in light of statutory text and history, must contain. The two cases are, of course, literally “different,” ante, at 148, n. 8, but not in any legally relevant way.

 The Court also tries to distinguish Torres on the ground that failure to comply with Rule 3 presented a different “possibility of gamesmanship,” ante, at 148, from that presented here. I fail to see the relevance of that happenstance. The premise of the Court’s opinion is that the question of jurisdiction vel non is governed by a “elear-statement principle,” ante, at 142. The statement here is precisely as clear as the statement in Torres. Do we enforce clear statements only when there is a “possibility of games­manship”? The Court’s freewheeling purposivism defies textual analysis.

 We held in NowaJcowski v. Maroney, 386 U. S. 542, 543 (1967) (per curiam), that “when a district judge grants [a certificate of probable cause], the court of appeals must grant an appeal . . . and proceed to a disposition of the appeal in accord with its ordinary procedure.” See also Carafas v. LaVallee, 391 U. S. 234, 242 (1968) (Nowakowski requires “that the appeal [be] considered on its merits ... in cases where a certificate of probable cause has been granted”).

 It may well be that what I have called a false dichotomy was indeed meant to revise our jurisprudence. In Kontrick v. Ryan, 540 U. S. 443, 455 (2004), we said by way of dictum the following: “Clarity would be facilitated if courts and litigants used the label ‘jurisdictional’ not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.” Unless an appeal lacking a timely filing of a notice of appeal can be considered one that falls outside the appellate court’s “subject-matter jurisdiction” (which would be an odd usage), Kontrick’s dictum effectively announced today’s decision, the over­ruling of Torres and Browder v. Director, Dept, of Corrections of III., 434 U. S. 257 (1978), and the elimination of jurisdictional treatment for all *170 procedural requirements for appeal. That the announcement has not been heeded is demonstrated by Bowles v. Bussell, 551 U. S. 205 (2007) (decided after Kontrick), which (over the dissent of the author of Kon-­trick) reaffirmed Browder. I confess error in joining the quoted portion of Kontrick.